Dwight COLEMAN, Lester Crowsheart, Sharon Crowsheart, Russel Folmer, Anna Mae Folmer, George Hatfield, June Hatfield, Donald McCabe, Diane McCabe, Gary Barrett, Rosemary K. Barrett, Richard L. Harmon, Betty J. Harmon, Larry L. Robertson, Nancy K. Robertson, Ross Wade and Maureen Wade, on behalf of themselves and others similarly situated, Plaintiffs,

v.

John R. BLOCK, Secretary of Agriculture; Charles W. Shuman, Administrator of the Farmers Home Administration; Ralph W. Leet, State Director of the Farmers Home Administration; Harold T. Aasmundstad, Glen W. Binegar, Allen G. Drege, Dennis W. Larson, Odell O. Ottmar, and Joseph J. Schneider, as District Directors of the Farmers Home Administration for North Dakota; and Samuel Delvo, Lorace Hakanson, Larry Leier, Charles Schaefer and James Well, as County Supervisors of the Farmers Home Administration in North Dakota, Defendants.

Civ. No. A1–83–47.

United States District Court,
D. North Dakota,
Southwestern Division.

March 3, 1986.

Robert Vogel, Grand Forks, N.D., William R. King, Atlanta, Ga., Burt Newborne, American Civil Liberties Union, New York City, Alan Kanner, Philadelphia, Pa., William, Reesman & Tate, Booneville, Mo., Martha A. Miller, Atlanta, Ga., James T. Massey, Lynn A. Hayes, Minneapolis, Minn., for plaintiffs.

Arthur R. Goldberg, Merril Hirsh, Dept. of Justice, Civil Div., Washington, D.C., Gary Annear, Asst. U.S. Atty., Fargo, N.D., for defendants.

## MEMORANDUM AND ORDER

VAN SICKLE, Senior District Judge.

On January 24, 1986, this court granted Plaintiffs' motion for leave to file a supplemental complaint challenging regulations adopted by Farmers Home Administration (FmHA) on November 1, 1985 and on February 18, 1986 granted their motion for leave to file an amended supplemental complaint. Plaintiffs seek a preliminary injunction: 1). enjoining the government from issuing any form of the "Notice of Intent to Take Adverse Action" and from proceeding to take any adverse action against any borrower who has already been served with such notice until further order of this court; 2). enjoining the government from requiring Plaintiffs or class members to fill out or comply with the requirements of Form 1962-1, the "Agreement for the Release of Proceeds" and the provisions of 7 C.F.R. § 1962.17 relating to the planning of farm sales and use of proceeds; 3). enjoining the government from refusing to release, denying or otherwise disallowing release of sufficient secured farm income to allow Plaintiffs and plaintiff class members to pay necessary living and operating expenses, and 4). enjoining the government from proceeding to take any liquidation or foreclosure action against any class member whose loan has been accelerated pursuant to the "pretermination package" served between December 20, 1983 and October 19, 1984. (Plaintiffs' January 31, 1986 Letter Brief at 15 and February 4, 1986 Letter of James T. Massey). Defendants oppose the motion for a preliminary injunction.

### FmHA's NOVEMBER 1, 1985 REGULATIONS

The November 1, 1985 regulations were enacted pursuant to 7 U.S.C.A. § 1981a (Supp.1985), which provides:

> In addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this chapter, or under the provisions of any other law administered by the Farmers Home Administration, and forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower

that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower. The Secretary may permit interest that accrues during the deferral period of any loan deferred under this section to bear no interest during or after such period: Provided, That if the security instrument securing such loan is foreclosed such interest as is included in the purchase price at the foreclosure shall become part of the principal and draw interest from the date of foreclosure at the rate prescribed.

By order dated February 17, 1984, this court enjoined Defendants from proceeding to liquidate or to terminate a borrower's living and operating allowance, from accelerating a borrower's indebtedness, from foreclosing on a borrower's real property or chattels, from demanding voluntary conveyance by a borrower, or from repossessing a borrower's chattels, unless Defendants give a borrower against whom they propose to proceed at least thirty days notice which: 1). informs the borrower of the right to a hearing to contest the proposed action and to establish eligibility for loan deferral pursuant to 7 U.S.C. § 1981a, 2). provides a statement of reasons for the proposed action, 3). informs a borrower of the factors that determine eligibility for loan deferral, and 4). informs a borrower of the official (who must be a person who was not actively involved in the initial decision to take the proposed action) who would preside at a hearing.

In response to this court's order and to orders of other courts, FmHA adopted new regulations designed to implement section 1981a. Plaintiffs' supplemental complaint alleges the new regulations are defective, both procedurally and substantively, in several respects. Their instant motion centers on the new regulations' procedures for giving notice of FmHA's intent to take adverse action against a borrower and on the new regulations' procedures for planning for the use of farm production income.

The regulations provide that every borrower who has granted FmHA a security interest in chattels must complete a Form 1962–1 (Agreement for the Use of Proceeds/Release of Chattel Security) once each year. 50 Fed.Reg. 45758 (1985) (to be codified at 7 C.F.R. § 1924.57(b)(1)). The form is to be completed "to show how, when, and to whom the borrower will sell, exchange, or consume security and use sale proceeds and insurance proceeds derived from the loss of security." 50 Fed.Reg. 45787 (1985) (to be codified at 7 C.F.R. § 1962.7). The form is ordinarily to be completed by the FmHA county supervisor with the assistance of the borrower, but if the county supervisor and the borrower cannot agree on how to complete the form and the form is not being completed in conjunction with a new loan application, the county supervisor must schedule a meeting of the borrower, the county supervisor, and the district director. If an agreement is not reached at that meeting, the district director is to make a decision on the planned use of the proceeds and to complete the form. FmHA's administrative appeal process does not apply to the district director's decision. If the disagreement occurs when the form is being completed in connection with an application for a new loan, FmHA's administrative appeals process is available to the borrower. 50 Fed. Reg. 45759 (1985) (to be codified at 7 C.F.R. § 1924.57(b)(3)).

A county supervisor is authorized to approve dispositions of FmHA chattel security, including proceeds, in accordance with a borrower's completed Form 1962–1 if the following conditions are met: 1). the proceeds are used for the purposes and in the amount set out on the form, 2). the borrower has completed and signed a current farm and home plan or a similar plan of operation, 3). the borrower's projected income and expenses are based on the borrower's proven record of production and financial management, 4). the borrower is utilizing the key production and financial management practices required by FmHA, and 5). the property is sold or exchanged for its

present market value. 50 Fed.Reg. 45787 (1985) (to be codified at 7 C.F.R. § 1962.-17(b)).

After FmHA makes an initial decision to take some adverse action against a borrower, three separate forms are to be sent to the borrower simultaneously. Form 1924–25 (Notice of Intent to Take Adverse Action) is intended to advise the borrower of the type of adverse action FmHA intends to take and to provide the reasons for that action. Form 1924–26 (Borrower Acknowledgement of Notice of Intent to Take Adverse Action) is to be completed by the borrower in response to Form 1924–25. Form 1924–14 (Farmer Program Borrower Servicing Options Including Deferrals and Borrowers' Responsibilities) describes loan servicing options available to farmer program borrowers. 50 Fed.Reg. 45751, 45760 (to be codified at 7 C.F.R. §§ 1872.-17(b) and 1924.59(d)).

The "pretermination package" was a set of procedures utilized by FmHA between December 20, 1983 and October 19, 1984 in an attempt to comply with this court's order of November 14, 1983, 580 F.Supp. 192 (D.N.D.1983). FmHA discontinued use of the "pretermination package" when it decided to adopt regulations implementing section 1981a. The "pretermination package" gave borrowers who received it a form of notice of eligibility for loan deferral and set out eligibility criteria for loan deferral. The new regulations do not adopt the same eligibility criteria as did the "pretermination package," and borrowers who received the "pretermination package" are excluded from consideration for deferrals under the new regulations. 50 Fed. Reg. 45740 (1985).

## FACTS

In support of their motion, Plaintiffs presented the testimony of two FmHA borrowers. Gary Barrett, who farms in Adair County, Iowa, testified that he is delinquent on loan payments to FmHA. He applied for a 1986 operating loan and met with his FmHA county supervisor in early January, 1986; Barrett testified that the county supervisor at that time gave him a partially completed FmHA Form 1962–1, and asked him to review and sign it. The form as completed covered only the period from January 1, 1986 through May 1, 1986. It listed income of $14,100 from hog sales and $3,000 from a deficiency payment; releases listed were $5,000 for family living expenses, $1,500 for feed, and $750 for payment of a repair bill. The remaining income was designated to be paid to FmHA. There was no provision for release for payment of cash rent for the 1986 crop year, a portion of which is due March 1, 1986. When Barrett protested that the amounts to be released for living and operating expenses were inadequate, the county supervisor agreed to a release of an additional $1,000. Barrett's loan application for the 1986 operating year was denied. He testified that the county supervisor told him he should voluntarily liquidate his farming operation. Barrett also testified that he had not received a notice of intent to take adverse action or an explanation of available loan servicing options.

Walter Geray, an FmHA borrower who farms near Mahnomen, Minnesota and whose loan payments to FmHA are current, also testified in support of Plaintiffs' motion. He testified concerning his understanding of the requirements of FmHA Form 1962–1 and his inability to complete the form with the specificity he understood to be required. Geray testified that the Form 1962–1's agreement to sell proceeds at specified prices would, in his opinion, inhibit his ability to negotiate favorable sale prices if the information were available to potential purchasers. Geray stated that if he completed Form 1962–1 and signed it, he felt that he would inevitably be forced to violate the agreement or repeatedly required to renegotiate it during the course of the operating year.

In addition to the live testimony presented, Plaintiffs submitted a number of written declarations. James A. Stengrim, an FmHA borrower from Warren, Minnesota, stated that he and his wife had received three notices from FmHA on January 9,

1986. Those notices were Form 1924–25, Form 1924–26, and Form 1924–14. Stengrim stated that he disputes allegations contained in the notices, that he would like to be considered for various loan servicing options, and that he did not understand how to complete the Borrower Acknowledgement Form, Form 1924–26, to appropriately respond to the reasons listed for the decision to take adverse action and so sought the advice of an attorney.

Robert A. Smith, an FmHA borrower who farms near Murdock, Minnesota, also submitted a declaration. He stated that his wife met with their FmHA county supervisor on January 14, 1986, that at that time she was given two forms, Form 430–2 (Farm and Home Plan) and Form 1962–1, and that she was led to understand that FmHA would grant no releases of its security interest for living and operating expenses until the two forms were completed and were approved by the county supervisor. Smith stated further that he is unable to complete Form 1962–1 with the specificity that he understands to be required and that he consequently feels it is not possible for him to sign the form.

Russel G. Folmer and Anna Mae Folmer, who farm near Wing, North Dakota, also submitted a declaration in support of the motion for a preliminary injunction. They stated that they had received a mailing from FmHA on December 15, 1985 which contained Form 1924–25, Form 1924–26, and Form 1924–14. They stated that they disputed the reasons listed for FmHA's decision to take adverse action, that they wished to appeal that decision, and that they wished to be considered for various loan servicing options. They stated further that they understood that they would not be given an opportunity to appeal the allegations contained in the notice unless they are denied loan servicing, that consequently they believed there was no appropriate way to complete the Form 1924–26, and that they would not have known how to properly complete the Form 1924–26 if they had not gotten advice from their attorney.

Plaintiffs submitted several written declarations in addition to those of FmHA borrowers. John Cunningham, a county extension agent in Big Stone County, Minnesota, submitted a declaration concerning his work with a farm management assistance project. He stated that he had reviewed Form 1962–1 and that he believes it is unrealistic to expect farmers to project farm income with the specificity he understands to be required on Form 1962–1. He stated that price projections prepared by University of Minnesota agricultural economists proved to be twenty-five to forty-five percent higher than actual prices received for various farm commodities at the end of 1985. He stated further that it is difficult to predict crop yields with greater than eighty percent accuracy and that it is also difficult to predict the number of head of livestock that will be available for sale at the end of an operating cycle. Cunningham stated that he has knowledge that it often takes three to six weeks for an FmHA borrower to schedule an appointment with a county supervisor in the Stevens County and Swift County offices, and that it would be difficult for a farmer to wait that long to obtain approval and negotiate changes in Form 1962–1.

Arthur Schrenk, a farm credit counselor for the State of North Dakota and former FmHA county supervisor, also submitted a declaration. He stated that it is difficult for FmHA borrowers to project commodity prices, crop yields, livestock production, time of sale of crops, or the elevator to which grain will be sold in the manner he understands to be required on Form 1962–1. Schrenk stated that he believes that almost every FmHA borrower who completed and signed a Form 1962–1 would seek to make changes in the form during the course of the operating cycle, that he has knowledge that it often takes a week or more to schedule an appointment with a county supervisor, and that that delay could be devastating to a farm operation if it occurred at a crucial time such as planting or harvesting.

Garnette Hanson, a farm advocate employed by the Minnesota Department of Agriculture, submitted a declaration wherein he stated that he had been told by the Minnesota FmHA state director on January 13, 1986 that forty-five to fifty-five "Notices of Intent to Take Adverse Action" had been mailed out in Minnesota.

Lou Anne Kling, who farms in Yellow Medicine County, Minnesota, submitted a declaration describing her efforts to assist other farmers in their dealings with FmHA and her work as a farm advocate for the State of Minnesota. Kling stated that, in her judgment, FmHA's new regulations (including required completion of Form 1962–1) outline a process which is completely unworkable, because of the specificity required in making income and expense projections and because of the delays entailed in obtaining FmHA approval of changes in the form. Kling also stated that, in her judgment, the notices provided in Forms 1924–25, 1924–26, and 1924–14 are inadequate in the following respects: containing no explanation of how to apply for deferral or what is required to obtain a deferral, containing no meaningful description of loan servicing options other than deferral, implying that an application for loan servicing options would be to no avail, containing no description of rights in an appeal hearing, and requiring a borrower to bring all "necessary information" to a mandatory meeting without describing what information is "necessary." Kling also stated that she is concerned that many FmHA borrowers will be unable to understand the various forms because they contain language which is confusing and contradictory.

Plaintiffs also submitted a declaration of Rosemarie J. Park, an Associate Professor of Education at the University of Minnesota, who specializes in the areas of adult literacy and reading. Park's declaration describes her analysis of Forms 1924–14, 1924–25, 1924–26, and 1962–1 in terms of their reading difficulty and their adherence to accepted "plain language criteria." She states that, in her judgment, none of the four documents would meet the criteria for certifying contracts as being compliant with the Minnesota Plain Language Contracts Act (Minn.Stat. § 325G.29 *et seq.*) or under similar laws in other states. Considering the readability level of the documents and the education level attained by most FmHA borrowers, Park stated that, in her judgment, the percentage of FmHA borrowers able to read and understand the documents may be fewer than thirty percent.

In opposition to the motion, Defendants filed a declaration of Glenn J. Hertzler, Jr., Acting Assistant Administrator of Farmer Programs for FmHA, who is responsible for implementation of FmHA's new regulations. In his January 17, 1986 declaration, Hertzler stated that FmHA had delayed sending Forms 1924–25 and 1924–26 in accordance with a January 6, 1986 directive to all state FmHA directors, but that some of those notices were issued in several states between November 1, 1985 and January 6, 1986. Hertzler stated further that Forms 1924–14, 1924–25, and 1924–26, along with the plans for distribution of those forms, would undergo some changes. He also stated that he estimated FmHA would suffer losses in the next year of $1.06 billion due to delinquency in repayment if FmHA were enjoined from implementing its November 1, 1985 regulations. In a subsequent declaration, Hertzler stated that FmHA had decided to make no revisions in Forms 1924–14 and 1924–26 and submitted a copy of revised Form 1924–25. Hertzler also outlined FmHA's most recent plans for distribution of the various notices.

Defendants also submitted a copy of FmHA Administrative Notice (AN) No. 1336(1962), issued February 7, 1986, which contains directions for completion of Form 1962–1 and which states in part:

County Supervisors should explain to borrowers that the process for completing a Form FmHA 1962–1 is the same process used in completing the Farm and Home Plan, and that Form FmHA 1962–1 is intended to describe the borrower's operation and not place restric-

tions on the operation. As when completing the Farm and Home Plan, borrowers are expected to examine their records and operations carefully in order to complete the Form FmHA 1962–1. Borrowers should be told that the sale dates, quantities to be sold and expected amount of proceeds are *projections only*, and that FmHA realizes it is not possible to predict the exact number of bushels of corn which will be harvested or the exact day calves will be sold, for example. FmHA expects that borrowers will make their projections as accurate as they can be using their farm records and their experience in analyzing their operations and available markets. A borrower who raises feeder pigs should know how many sows are bred and the average litter per sow, and should be able to use this information to show planned sales of 100 pigs in January and February, 100 in March and April, etc. Each individual pig does not have to be listed and exact sale dates are not expected to be listed.

County Supervisors should also inform borrowers that the list of purchasers is a list of *potential* purchasers. If there are two convenient grain elevators or auction barns which the borrower might use, both should be listed. While borrowers are expected to be as specific as possible, FmHA recognizes that borrowers do not always know in advance who will buy their products. In such cases, the form should be completed to show the manner in which farm products will be sold. For example, if a borrower sells produce at a roadside stand or sells hay to neighboring farms, complete the form to show that the products will be sold at a roadside stand or to residents of a certain county. However, most borrowers have a few regular customers and these customers should be listed on the form. The County Supervisor should explain that this information is necessary to enable FmHA to protect its security interest in the property.

Borrowers should be told that, if anyone makes a request to see their FmHA files, it will be FmHA's policy *not* to release Form FmHA 1962–1 (see FmHA Instruction 2018–F, § 2018.259(b)(2)).

The most common types of revisions which will be made to Form FmHA 1962–1 are these four:

1. Borrowers who want to sell, exchange or consume property or to use proceeds in a way not shown on the Form FmHA 1962–1 must obtain the prior consent of the County Supervisor. For example, if a borrower had planned to sell feeder calves but decides to hold them to slaughter weight, the prior consent of FmHA is necessary. A borrower must obtain prior consent to use proceeds to pay a feed bill if the proceeds were supposed to be used for some other purpose. The same is true if a borrower had planned to sell a crop and decides to place it under CCC loan or decides to feed it directly to livestock. The County Supervisor *must* give permission for the requested change if the conditions set out on the Form FmHA 1962–1 and in § 1962.17(b) are met. These conditions should be reviewed with the borrower who asks for permission to use property or proceeds in a way different from what was planned. If the County Supervisor cannot approve the requested change, the borrower must be told which of the conditions of the Form FmHA 1962–1 or in § 1962.17(b) cannot be met.

2. After a planned sale is made, the borrower must inform the County Supervisor if the amount received was different than the amount shown on the Form FmHA 1962–1. Borrowers are not required to check with FmHA before making a planned sale just because the price the borrower expects to receive on the sale date is less or more than the price the borrower had planned to receive.

3. Borrowers who make a change in their operation must obtain prior approval of the change from the County Supervisor. An example of a change

in operation is a borrower who decides to stop dairy farming and begin raising feeder steers.

4. Borrowers who decide to sell to someone other than a purchaser on the list do not need to get prior *approval* from FmHA. However, they must promptly notify the County Supervisor of the new purchaser in advance of the sale, if practicable. The purpose of this is to enable FmHA to protect its security interest.

．　　．　　．　　．　，　．

The County Supervisor will have to decide whether the borrower needs to come into the County Office to make the revision or whether the revision can be made in some other way. Changes which materially affect the borrower's operation will almost always require the borrower to visit the County Office so that the County Supervisor and the Borrower can complete a new farm plan and make necessary revisions to the Form FmHA 1962–1.

Other revisions may be agreed to over the telephone. If this is done, the County Supervisor should revise the form in the borrower's case file, initial and date the change and mark the form "Revised." The County Supervisor will then have to decide whether to write to the borrower and confirm the revision; this may be done by a letter or by sending a copy of the "Revised" form to the borrower. If the County Supervisor sends the borrower a copy of the form, the County Supervisor might decide to ask the borrower to date and initial the change and return the form to the County Office. If this is not done, the County Supervisor will ask the borrower to date and initial the change the next time the borrower is in the County Office.

Whenever a Form FmHA 1962–1 is revised, the County Supervisor should consider whether the change requires the loan to be considered for rescheduling, reamortization or deferral.

(Emphasis in original.)

(Attachment to Defendants' February 3, 1986 Letter Brief.)

## DISCUSSION

In considering the motion for a preliminary injunction, this court must weigh the following factors: 1). the threat of irreparable harm to members of the plaintiff class, 2). the balance between the threatened irreparable harm to members of the plaintiff class and the harm that would result to Defendants if the injunction were granted, 3). the probability that Plaintiffs will succeed on the merits, and 4). the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir.1981) (*en banc*). No single factor is determinative. This court must determine whether the overall weight of these factors supports granting the requested injunctive relief.

The following states, who were granted leave to file a brief *amicus curiae*, argued in support of Plaintiffs' motion for a preliminary injunction: North Dakota, Minnesota, Texas, Iowa, Illinois, Kansas, and Oklahoma. Their argument centered primarily on the new regulations' elimination of the priority afforded to releases of FmHA's security interest to pay living and operating expenses, FmHA's social welfare function, and the impact deprivation of releases for essential living and operating expenses may have on state treasuries.

*Irreparable Harm*

This court will first consider Plaintiffs' assertion that they have demonstrated a threat of irreparable harm. First, they assert members of the plaintiff class have been denied essential living and operating expenses during the process of completion of Form 1962–1, and that such denials are tantamount to liquidation or foreclosure. They assert that FmHA's refusal to incorporate releases for essential living and operating expenses into a borrower's Form 1962–1 will result in the borrower being "starved out" of a farming operation. Second, they assert that a member of the plaintiff class who completes and signs a Form 1962–1 in order to receive a new loan

is irreparably harmed because he or she signs the form knowing that violations of it are inevitable. They assert a borrower is forced to choose between: 1). signing a Form 1962–1 knowing he or she may violate it and so be subject to a panoply of adverse consequences including possible criminal prosecution, and 2). being denied further operating loans because he or she refused to sign a Form 1962–1. Third, they allege irreparable harm in the claimed inadequacies of the procedure for notice of FmHA's intent to take adverse action. They assert the notice given in Forms 1924–25, 1924–26, and 1924–14 does not adequately inform a borrower of the right to seek a deferral pursuant to section 1981a. The essence of Plaintiffs' claimed irreparable harm is their claim that actions taken pursuant to the new regulations may result in members of the plaintiff class being unable to continue their farm operations. The essence of Plaintiffs' claimed threat of irreparable harm is thus very similar to that upon which this court's May 5, 1983 preliminary injunction in the principal action was based.

### Balance of Harms

This court will next consider the balance between the threatened irreparable harm and the harm that would result to Defendants if the injunction were granted. Defendants submitted evidence estimating that FmHA could lose approximately $1.06 billion in the next year due to loan deficiencies if it were enjoined from acting pursuant to the November 1, 1985 regulations. They estimated that approximately twenty-five percent of that loss would be saved through implementation of the new regulations. Plaintiffs do not dispute the amount of the loss which Defendants assert. Plaintiffs argue, however, that FmHA is protected by the security interests it holds and that in any event the loss FmHA may suffer because of a delay in implementation of the new regulations is outweighed by the threatened irreparable harm to Plaintiffs. The potential monetary loss to FmHA is substantial, but that harm must be weighed against the potential harm to individual members of the plaintiff class.

In considering the potential monetary loss to FmHA, this court must consider FmHA's most recent statements of intent to proceed only against some portion of those borrowers who are currently in default on their loans; it is not clear whether the estimated twenty-five percent savings accounts for this factor. This court must also consider that Plaintiffs are not asking that every FmHA borrower who is delinquent in payments be granted a loan deferral; they are asking for a meaningful opportunity to request such a deferral. And granting deferrals to certain borrowers may eventually prove to be in FmHA's best financial interest. Aside from a potential direct monetary loss, Defendants argue that FmHA would be harmed because it would be unable to administer its loan programs consistent with its mandate to allocate limited resources responsibly and because resources devoted to protecting current borrowers could not be allocated to new loans.

### Public Interest

The balance of harms discussed above is closely related to the "public interest" which this court must also consider in ruling on Plaintiffs' motion. Plaintiffs assert the public interest favors granting an injunction because it is in the public interest to require the federal government to comply with law and because the public interest is served when citizens feel that they have been dealt with fairly and when erroneous deprivations of benefits are avoided. Defendants, on the other hand, argue that the public interest favors denial of the motion because the public interest is served when the government protects its security interest and exercises adequate supervision over borrowers' operations and because terms that make it more difficult for FmHA to protect its security interests make it less prudent for FmHA to make new loans. This court is aware that increased procedural obligations may result in FmHA becoming more reluctant to grant future loans. But certainly the public interest is advanced when the government acts in accordance with established pre-

cepts of due process and fundamental fairness in protecting its security interests. The public interest is broader than the government's financial interest.

*Likelihood of Success on Merits*

Finally, this court must consider the likelihood that Plaintiffs will succeed on the merits. The preliminary injunctive relief sought requires analysis of the likelihood of success on four issues: adequacy of notice, exclusion of those borrowers who received the "pretermination package" from consideration for deferral under the new regulations, use of Form 1962–1, and releases of FmHA's security interest to pay necessary living and operating expenses.

*Notice Forms*

■ Concerning adequacy of notice, Plaintiffs assert that Forms 1924–14, 1924–25, and 1924–26 taken together, are generally misleading, intimidating, confusing, and inaccurate. Further, the assert that any adverse action initiated by sending those notice forms will deny members of the plaintiff class due process of law guaranteed by the fifth amendment. Plaintiffs point to Form 1924–14's description of the section 1981a deferral program:

> Deferral: An approved delay in making regularly scheduled payments. Such a delay may be granted if FmHA finds that, due to circumstances beyond your control, you are temporarily unable to continue making the scheduled payments on such loan(s) without unduly impairing your standard of living. A more detailed description is available at any FmHA office.

Plaintiffs assert this description is inadequate because it does not expressly state that both principal and interest payments may be deferred or that the interest accrued during the deferral period will not be capitalized, does not give an indication of the types of circumstances FmHA will consider to be beyond a borrower's control, does not state what period of time may be considered a "temporary" inability to pay, does not state how living standards are to

be determined, or does not state any of the non-statutory conditions of deferral eligibility imposed by the new regulations.

Plaintiffs also argue that the notice provided does not comply with this court's previous orders. The order granting a preliminary injunction in the principal action stated:

> [T]his court finds that at least some further specification of standards is necessary to give the applicant notice of the factors he must show. The statute at present requires the applicant for loan deferral to meet three conditions: (1) that he cannot make the required payments without unduly impairing his standard of living; (2) that he cannot make the payments due to reasons beyond his control; and (3) that his inability to make payment is temporary. But from the statute the applicant gets no idea of how living standards are determined, how severe an impairment is required, what constitutes a reason beyond one's control, how severe it must be, and how long a temporary inability to pay can last.

*Coleman v. Block,* 562 F.Supp. 1353, 1362 (D.N.D.1983). Plaintiffs also cite the language of *Allison v. Block,* 723 F.2d 631 (8th Cir.1983):

> Congress intended the Secretary to give notice of the availability of § 1981a relief to all CFRDA borrowers subject to loan acceleration or foreclosure and to establish a uniform procedure under which the borrowers can make a requisite request and prima facie showing.... The requirement of the showing of prima facie eligibility is necessarily premised upon theexpectation that some procedure will be provided under which the borrower may make the requisite showing. Thus, the rudimentary elements of adequate notice and an opportunity to be heard are embodied in the language of § 1981a.

*Id.* at 634.

From the evidence presented by Plaintiffs, this court cannot conclude that Plaintiffs are likely to succeed on this issue. Those borrowers who received the notices and submitted declarations may have been

unable to understand all aspects of their available options after reading the notices. However, the notice was sufficient to alert them of the need to take some action to protect their rights and to cause them to seek further advice. In *Atkins v. Parker*, — U.S. ——, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985), the Supreme Court stated:

> As a matter of constitutional law there can be no doubt concerning the sufficiency of the notice describing the effect of the amendment [which might have resulted in reduction or termination of food-stamp benefits] in general terms. Surely Congress can presume that such a notice relative to a matter as important as a change in a household's food-stamp allotment would prompt an appropriate inquiry if it is not fully understood. The entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny. To contend that this notice was constitutionally insufficient is to reject that premise.

*Id.* 105 S.Ct. at 2530–31. Similarly, FmHA can presume that a borrower receiving the notices will make further inquiries if the borrower does not fully understand the notices.

One aspect of the notice forms is, however, of concern. As drafted, the notices do not give the name of the official who would preside at a hearing. That requirement was imposed by this court's earlier orders. An injunction addressed to this matter would, however, merely duplicate the permanent injunction already in force.

Plaintiffs also suggest that FmHA should be enjoined from acting pursuant to the new regulations until the notice forms have been published in the Federal Register, adopted in final form, and approved by the court. (February 4, 1986 Letter of James T. Massey). To issue such an order, this court would first have to determine that the forms are "rules" within the meaning of the Administrative Procedure Act (APA). Though Plaintiffs assert the forms are "rules" within the meaning of the APA, they do not specify the basis of that assertion. (*See* Plaintiffs' Memorandum in Support of Preliminary Injunction at 69). For purposes of the APA, a "rule" is "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C.A. § 551(4) (1977). This court has discerned no statements implementing or interpreting law or policy in the notice forms that are not also contained in the new regulations. *See* K. Davis, Administrative Law Treatise §§ 7.4 and 7.5 (1979 & Supp.1982).

Since the new regulations were issued on November 1, 1985, FmHA has announced several changes in its plans for distribution of the notices of intent to take adverse action. Without objecting to the substance of those changes, Plaintiffs suggest Defendants have contravened their own regulations by redefining the groups of borrowers who will receive the notices. Plaintiffs assert a new regulation, 50 Fed.Reg. 45761 (1985) (to be codified at 7 C.F.R. § 1924.71), which provides for sending the notices to all FmHA borrowers more than $100 behind on their payments to FmHA as of December 31, 1985 is a legislative rule which can be changed only through the rulemaking process. Even if FmHA acted contrary to its regulations in changing the group "targeted" to receive the notices, that action would not harm members of the plaintiff class. This court will not consider FmHA's changes in the "target" group for purposes of this motion.

### *"Pretermination Package"*

This court will next consider Plaintiffs' claim regarding the "pretermination package." Plaintiffs argue that exclusion of the group of borrowers who, during 1984, received the "pretermination package" from consideration for loan deferral under the procedures established by the new regulations violates: first, the APA, because FmHA has stated no reason for the exclusion, second, the fifth amendment because

those borrowers who received the "pretermination package" have not been afforded adequate due process, and third, the equal protection clause because exclusion of this group of borrowers is not rationally related to a legitimate government interest. Defendants raise three arguments concerning the "pretermination package" issue: first, they argue those borrowers who received the "pretermination package" received adequate due process, second, they argue Plaintiffs' claims concerning these procedures are barred under application of the doctrine of laches, and third, they argue exclusion of that group of borrowers under the new regulations is not arbitrary and capricious.

FmHA applied certain restrictions to those borrowers who received the "pretermination package" that it did not incorporate into the November 1, 1985 regulations. First, deferral eligibility was limited to circumstances that occurred two years or less prior to application for deferral. Second, poor economic conditions in the agricultural sector were not recognized as circumstances beyond the borrower's control which could justify deferral. Third, deferrals could be granted only for two years rather than for five years. Fourth, borrowers who were in bankruptcy proceedings were specifically excluded from consideration for loan deferrals. Fifth, notices of deferral eligibility were worded differently than in the current forms.

As to Defendants argument that Plaintiffs' claim is barred by laches, this court concludes that the issue of exclusion of this group of borrowers is sufficiently different from the issue concerning the "pretermination package" which Plaintiffs raised earlier in this litigation so that the doctrine of laches does not bar consideration of the claim. However, Plaintiffs presented no evidence concerning this aspect of their claim. This court therefore cannot conclude that there is a likelihood Plaintiffs will succeed on the merits of this claim.

### Use of Form 1962-1

 Form 1962-1 is also central to Plaintiffs' claim. They argue that the planning process outlined by the new regulations deprives borrowers of any meaningful notice and opportunity to be heard on disputes involving the planned use of farm proceeds, but at the same time makes a borrower completely dependent on the Form 1962-1's contents to obtain releases of FmHA's security interest to pay necessary living and operating expenses. Further, Plaintiffs assert the form requires that borrowers project income and expenses with such specificity that a borrower will be forced to violate the terms of the form's agreement. However, AN 1336 (1962) submitted by Defendants suggests that FmHA will not require the specificity that Plaintiffs suggest. Though AN 1336 (1962) is subject to modification at FmHA's desire, this court cannot presume that FmHA will modify it so as to require that Form 1962-1 be completed with the precision Plaintiffs fear. Therefore this court cannot conclude that it is likely Plaintiffs will succeed on the merits of their claim concerning the new regulations' planning process, including use of Form 1962-1.

### Release Priority for Living and Operating Expenses

 Plaintiffs argue that the new regulations establish a procedure which gives county supervisors and district directors unreviewable authority to determine amounts to be released for essential living and operating expenses for each borrower without providing any guidelines or criteria for those decisions. Plaintiffs contend the new regulations eliminated the priority for releases for living and operating expenses which was a part of FmHA's regulations prior to November 1, 1985, and that that elimination results in a violation of the constitutional rights of members of the plaintiff class. Prior to November 1, 1985, FmHA's regulations required that releases for living and operating expenses be given first priority when a farm and home plan was developed. 7 C.F.R. § 1924.57(c)(4) (1985). In the event farm income was less than projected in the farm and home plan,

living and operating expenses were to be given first priority in distribution of available farm income. 7 C.F.R. § 1962.17(c) (1985). FmHA received many comments from persons who objected to elimination of the priorities for living and operating expenses. FmHA made the following statement in response to those comments:

> The elimination of a priority list gives County Supervisors the flexibility they need to treat each farmer as an individual when reaching an agreement on the use of proceeds. FmHA must be included as a recipient of some of the proceeds since FmHA will have made a loan which the borrower has promised to repay. FmHA, as a lender, expects payment from the sale of such security to protect the Government's interests.

50 Fed.Reg. 45741 (1985). Plaintiffs assert the agency's statement does not demonstrate that it considered all relevant factors, since only "flexibility" and repayment of the debt to FmHA are mentioned in the statement. They argue elimination of the priorities should be set aside on review as arbitrary and capricious.

The Food Security Act of 1985, Pub.L. No. 99–198 (1985), enacted after the new regulations took effect, provides in part:

> Until such time as the Secretary accelerates a loan made or insured under this title, the Secretary shall release from the normal income security provided for such loan an amount sufficient to pay the essential household and farm operating expenses of the borrower, as determined by the Secretary.

*Id.* § 1315. Defendants assert this new statute moots Plaintiffs' claim concerning releases for essential living and operating expenses. Plaintiffs contend the new regulations do not comply with the Food Security Act of 1985, since the new regulations require that a Form 1962–1 be signed before releases are made and since FmHA effectively controls contents of the Form 1962–1 under the new regulations.

The language of this statute can be broadly interpreted to obligate FmHA to grant releases of its security interest for payment of essential living and operating expenses in all cases where FmHA holds a security interest in farm production income and where FmHA has not accelerated its loan. The principal dispute centers on authority to determine the amount of those releases. Plaintiffs argue that the new regulations give FmHA unfettered discretion in determining amounts to be allocated to essential living and operating expenses. Since farm production income is entitled to special protections because it represents "the fruits of a person's labor," a borrower must be given some meaningful opportunity to present facts supporting his or her determination of the amounts that should be planned for allocation to payment of living and operating expenses.

Resolution of this question requires analysis of the new regulations governing the planning process. Under the new regulations, if a borrower disputes a county supervisor's proposed plan for use of proceeds, the availability of an appeal procedure depends upon whether the dispute arises in connection with an application for a new or subsequent loan. Where there is a dispute and a new or subsequent loan is involved, "the loan will not be made and any appeal will be handled in accordance with [7 C.F.R., Part 1900, Subpart B]." 50 Fed.Reg. 45759 (1985) (to be codified at 7 C.F.R. § 1924.57(b)(3)). Thus, a borrower who disputes an amount proposed to be allocated to living and operating expenses on the Form 1962–1 may contest the county supervisor's decision through FmHA's administrative appeals process. Since this procedure affords some protection for releases of farm production income to pay essential living and operating expenses, this court cannot conclude Plaintiffs have demonstrated a likelihood of success on the merits insofar as their claim concerns determination of releases for essential living and operating expenses when application for a new or subsequent loan is involved.

The new regulations include the following provision on disputes concerning use of proceeds which do not arise in the context

of an application for a new or subsequent loan:

> If the borrower and the County Supervisor cannot reach an agreement on the planned use of proceeds on Forms FmHA 431–2 and 1962–1 when a new or subsequent loan is not involved, the County Supervisor will arrange for a meeting with the District Director, borrower and the County Supervisor. If during the meeting the District Director cannot negotiate a satisfactory agreement, the District Director will make the decision on the planned use of proceeds. Form FmHA 1962–1 will be completed by the District Director in accordance with the District Director's decision. An explanation of this action will be inserted on the forms which will be signed and dated by the District Director. Dispositions in violation of Form FmHA 1962–1 will be handled in accordance with Subpart A of Part 1962 of this chapter. *The District Director's decision is not appealable.*

50 Fed.Reg. 45759 (1985) (to be codified at 7 C.F.R. § 1924.57(b)(3)). But another section of the new regulations must also be considered:

> If an ... FmHA borrower ... is directly and adversely affected by an FmHA decision or action, the official taking action or making the decision will inform that person or organization by letter of the action taken within 15 calendar days of the action. *The term "directly and adversely affected" means having a request for FmHA assistance denied in whole or in part or having FmHA assistance reduced, canceled, or not renewed.*

50 Fed.Reg. 45756 (1985) (to be codified at 7 C.F.R. § 1900.56). This court finds the two sections to be inconsistent: a refusal to incorporate releases for living and operating expenses into a plan for use of proceeds must be considered at least a partial denial of a request for FmHA assistance which would be appealable under the new section 1900.56, yet the new section 1924.57(b)(3) expressly states that such a decision is not appealable. A right to appeal delineated in one section is expressly negated in another.

The procedure outlined in new section 1924.57(b)(3) for a meeting of the borrower, county supervisor, and district director is not an adequate appeal procedure. Though it might arguably be considered an appeal to the district director of the county supervisor's initial decision, the role of the district director as described in that new regulation is not one of an independent hearing officer. Rather, it is one first of a negotiator and second of the ultimate decision maker. This court perceives no grounds for basing a borrower's appeal rights in a dispute concerning releases on whether that dispute occurs in connection with an application for a new or subsequent loan. A borrower who disputes an amount to be released for living and operating expenses during the yearly planning process is at least entitled to the protections of the appeal process outlined in 7 C.F.R., Part 1900, Subpart B. Farm production income—"the fruits of a person's labor"—is entitled to at least that minimal protection.

This narrow question is one of law. This court concludes Plaintiffs have demonstrated a likelihood of success on the merits of this claim. Defendants will be enjoined to provide an opportunity for appeal as outlined in 7 C.F.R., Part 1900, Subpart B to all members of the plaintiff class who dispute the amount to be allocated to living and operating expenses during the process of completion of Forms 1962–1 or 431–2.

*Additional Claims*

Plaintiffs also challenge certain conditions for section 1981a deferral which are contained in the new regulations, but which are not contained in the language of section 1981a itself. Section 1981a expressly includes three conditions for deferral: need resulting from circumstances beyond a borrower's control, "temporary" inability to pay, and undue impairment of a borrower's standard of living if loan payments continue at the current rate. The new regulations express certain additional conditions,

three of which are challenged by Plaintiffs: first, the borrower must have attempted voluntary debt adjustment or debt rescheduling with other creditors; second, before experiencing the hardship the borrower had paid all real estate taxes and property insurance premiums when due; and third, the borrower has applied recommended and recognized successful production and financial management practices. 50 Fed.Reg. 45775 (1985) (to be codified at 7 C.F.R. § 1951.44). Plaintiffs argue that these additional conditions are inconsistent with section 1981a. Defendants argue that the conditions are an expression of long-standing FmHA policies and that they are consistent with the discretion vested in the Secretary under the statute. Plaintiffs presented no evidence concerning these conditions of deferral. Neither are they a part of Plaintiffs' specific requests for injunctive relief. This court, therefore, need not consider their impact at this juncture. Because Plaintiffs presented no evidence, this court cannot conclude that Plaintiffs are likely to succeed on the merits of this claim.

*Balance of Dataphase Factors*

Considering each of the four factors outlined in *Dataphase,* this court concludes Plaintiffs have demonstrated that they are entitled to preliminary injunctive relief only insofar as they challenge the new regulations' procedure for planning for the use of proceeds in a situation where a new or subsequent loan is not involved. Though they may later present additional evidence and succeed on the merits of their other claims, they have not demonstrated the likelihood of success that is necessary to obtain preliminary injunctive relief on their other claims. Thus, though the other *Dataphase* factors—threat of irreparable harm, balance of harms, and public interest—may weigh in Plaintiffs' favor, this court must deny the motion for preliminary injunctive relief on the balance of the claims.

### CONCLUSION

For the foregoing reasons, IT IS ORDERED:

1). Defendants, their agents, subordinates, and employees are enjoined until further order of this court to provide to all members of the plaintiff class who dispute an amount to be allocated to living and farm operating expenses during the process of completion of Forms 1962–1 or 431–2 an opportunity to appeal as described in 7 C.F.R., Part 1900, Subpart B.

2). Plaintiffs' motion for a preliminary injunction is denied in all other respects.